IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

 vs.                                               CIVIL NO. 00-1011 LH/LFG
                                                        CRIM. NO. 96-563 LH

RANDY ALLEN WILLINGER,

    Defendant-Movant.

**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION**[1]

**Findings**

    1.  This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed July 12, 2000.  Movant Randy Allen Willinger ("Willinger") attacks the sentence entered by the United States District Court for the District of New Mexico in United States v. Willinger, No. CR 96-563 LH.

    2.  Willinger pled guilty to Count III of the third superseding indictment, charging possession with intent to distribute more than 100 grams of methamphetamine, and aiding and abetting. Judgment was entered on June 12, 1998, and Willinger was sentenced to 188 months incarceration, with 5 years of supervised release.  He appealed his sentence, and the judgment of the district court

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

was affirmed by the United States Court of Appeals for the Tenth Circuit on April 15, 1999. Although he raised the issue of ineffective assistance of counsel in his appeal, the Tenth Circuit held that this claim would be more appropriately brought in collateral proceedings. The Tenth Circuit also noted that the appeal, which raised issues of due process and ineffective assistance of counsel (albeit on somewhat different grounds than are asserted on this motion), was submitted on "what is essentially an Anders brief, see, Anders v. California, 386 U.S. 738, [87 S. Ct. 1396] (1967) ." United States v. Willinger, 176 F.3d 490 (Table, text in Westlaw), No. 98-2127, 1999 WL 218456, at *1 (10th Cir. Apr. 15, 1999). Anders sets up a procedure whereby an attorney who considers his client's appeal to be frivolous may seek to withdraw but must nevertheless file a brief referring to anything in the record that might arguably support the appeal.

      3. Willinger does not attack the conviction, only his sentence. He asserts that his trial counsel was ineffective at sentencing in that he: (1) failed to establish the difference in drug equivalents between amphetamine and methamphetamine; (2) did not explain to Willinger the difference in treatment of amphetamine and methamphetamine under the Sentencing Guidelines, suggesting that counsel was himself unaware of the difference; (3) failed to require the government to meet its burden of proof as to the type and amount of drugs representing Willinger's relevant conduct; (4) failed to argue that Willinger's relevant conduct actually merited a sentence as low as 63-78 months, an argument which would have caused the trial court to sentence Willinger nearer the low end of the range agreed upon; and (5) failed to object at sentencing that the plea agreement, under Rule 11(e)(1)(C), precluded the court from: (a) relying on the presentence report's consideration of evidence from the "Fourth Street trailer," which the parties had agreed was not to be considered; (b) taking judicial notice that Willinger played a primary role in the offense; and (c) using the "career

offender" Guideline provision to sentence Willinger at the high end of the range set forth in the plea agreement.

### Background

4.  Willinger was charged in a seven-count indictment with numerous offenses, including engaging in a continuing criminal enterprise, distribution of methamphetamine, possession with intent to distribute methamphetamine, maintaining a trailer on north Fourth Street in Albuquerque for the purpose of using and distributing methamphetamine, and being a felon in possession of various firearms.  (Third Superseding Indictment, filed March 19, 1997, Doc. 123 in CR 96-563).

5. On September 19, 1997, Willinger entered into a plea agreement with the government, in which he pled guilty to Count III, possession with intent to distribute more than 100 grams of methamphetamine.  In return, the government dropped all remaining charges, agreed not to bring additional charges against Willinger based on information then known to the government, and agreed not to bring charges against Laura Chavez.  The plea agreement was made pursuant F. R. Crim. P. 11(e)(1)(C), the parties agreeing that "a sentence not to exceed 188 months is the appropriate disposition of the case." (Plea Agreement, filed September 19, 1997, Doc. 262 in CR 96-563).

6.  At the plea hearing on September 19, 1997, Willinger told the court that he had signed the plea agreement, that he reviewed it with his attorney before signing, and that he understood all terms and conditions of the agreement.  (Transcript of plea hearing, September 19, 1997, at 4; hereafter, "TPH 4).  He was advised of the maximum possible penalty for the charge and told the court that, between January 1, 1995 and March 5, 1997, the dates listed in the indictment, "I did possess more than 100 grams of methamphetamine."  (TPH 5-6).  He agreed also that the government would be able to prove this, if the case were to go to trial.  (TPH 7-9).  The court accepted the plea and

adjudged Willinger guilty of the offense of possession with intent to distribute more than 100 grams of methamphetamine. (TPH 9).

7. Sentencing took place on May 7, 1998. Prior to sentencing, and following preparation of the presentence report, Willinger submitted numerous objections to factual assertions made in the presentence report. (Memorandum to U.S. Probation from Charles W. Daniels, Attorney for Randy Willinger, dated January 28, 1998, Ex. A to Motion for Continuance of Sentencing, Doc. 288 in CR 96-563). In particular, Willinger's trial counsel objected to any characterization of Willinger as the leader or boss of a drug ring operating out of the trailer on north Fourth Street, objected to statements that he had any involvement at all in a conspiracy involving drugs and guns at the trailer, and objected to his categorization as a "career offender," arguing instead that his criminal history category should be no more than level III. (Id.). In addition, on March 17, 1998, defense counsel filed Randy Willinger's Presentence Report Objections and Facts in Dispute (Doc. 299 in CR 96-563), setting forth these same objections for the court and requesting an evidentiary hearing on the factual disputes.

8. In both of these documents, counsel notes that Willinger candidly admits his own personal responsibility for using stimulants and depressants recreationally, and for possessing and sharing those substances with acquaintances, and states that this activity is the factual basis for his plea to Count III. (Doc. 299 in CR 96-563, at 2; Ex. A to Doc. 288 in CR 96-563, at 1).

9. Prior to the sentencing hearing, defense counsel and counsel for the government reached an agreement with regard to their differences over factual statements in the presentence report, and Willinger's attorney reported to the court that there would be no need for an evidentiary hearing. He stated in an April 29, 1998 letter to the sentencing judge, Hon. C. LeRoy Hansen, that the

government and the defense were stipulating "that Mr. Willinger's offense was not in connection with the Fourth Street trailer, but was in connection with other methamphetamine activities involving a total weight of more than 100 grams." In addition, the parties stipulated that no additional points should be added to the offense level, and "the circumstances do not call for any such adjustments other than what is specifically stipulated by the government and the defense in good faith in paragraph 3 of the plea agreement." (Letter to Hon. C. LeRoy Hansen from Charles W. Daniels, dated April 29,1998, filed in the correspondence section of the court file in CR 96-563). Paragraph 3 consists of Willinger's plea of guilty to Count III, possession with intent to distribute more than 100 grams of methamphetamine.

10. At the sentencing hearing on May 7, 1998, Willinger's counsel, Charles W. Daniels ("Daniels"), addressed the court on the topic of the factual disputes that had arisen over the presentence report. He stated that his investigation turned up no involvement by Willinger with the Fourth Street trailer and noted that, although Willinger admitted "being involved in other methamphetamine activities" and admitted to the possession of more than 100 grams of methamphetamine, he did not admit to involvement in the drug and gun activity at the trailer, and was not an "overlord" or boss of any drug operation. (Transcript of Sentencing Hearing, May 7, 1998, at 3-5; hereafter cited in the form, "TSH 3-5").

11. Daniels stated further that he and the Assistant U.S. Attorney had resolved their differences with regard to the factual assertions in the presentence report, so that an evidentiary hearing was not necessary. He said that he and government attorney agreed that they would confirm the accuracy of paragraph 3 of the plea agreement, stipulate to an offense level of 35 adjusted to 32 for acceptance of responsibility, and to an appropriate guideline range of 151 to 188 months, and

5

these stipulations were based on exclusion of the drugs from the Fourth Street trailer, which were not to be considered in sentencing. He concluded by telling the court that some legal disputes remained as to the proper criminal history computation, but that the trailer issue had been resolved. (TSH 5-6).

12. Larry Gomez, the Assistant U.S. Attorney assigned to Willinger's case, then addressed the court, confirming that the government had agreed to a sentencing range of 151-188 months and stating that the Daniels letter of May 6, 1998 embodied the parties' agreement. (TSH 6- 7). That letter informed the court that the government and the defense agreed that certain paragraphs of the presentence report should be changed, to read offense level of 35 adjusted to 32, a guideline range of 151-188 months, and a determination that certain controverted matters would not be taken into account in sentencing. (Letter from Charles W. Daniels to Hon. C. LeRoy Hansen, dated May 6, 1998, filed in correspondence section of the court file in CR 96-563).

13. Daniels then argued that the appropriate criminal history category was III (TSH 7-8), and he argued in mitigation that Willinger's prior convictions, although involving methamphetamine, were many years old and did not involve major trafficking activity, that after "paying his debt on that," he had been out of trouble and a law-abiding citizen for many years, and that it was only recently that he "had a slip" and got involved with methamphetamine again. Daniels argued that Willinger's actions should be put in perspective with the other defendants in this case. He also referred to the support Willinger received from his family and business associates, and to the fact that he ran a successful sheet metal business and had been a good family man since his earlier conviction, and asked that the court adopt the May 6, 1998 letter to the extent it requested that certain portions of the presentence report not be considered in sentencing. (TSH 8-12). The court agreed that those particular paragraphs would not be considered. (TSH 12).

14. The court concluded that there was no need for an evidentiary hearing, as all material disputed facts had been resolved. (TSH 17). The judge accepted the criminal history category of III, "on the grounds that the history is overrepresented by the presentence report" and that a level of III accurately represents Willinger's criminal background. (TSH 12, 14, 18). Although the court found that Willinger's prior convictions would justify holding him to a higher sentencing range, he nevertheless accepted the parties' plea agreement under Rule 11(e)(1)(C) and accepted the parties' stipulation to a guideline range of 151 to 188 months. (TSH 18-19). The judge then sentenced Willinger to a term of imprisonment of 188 months, recommending that he be incarcerated close to his wife and family in Tucson, Arizona, and that he participate in a substance abuse and counseling program during his term of incarceration. (TSH 19-20).

## Discussion

### Standards for Finding Ineffective Assistance of Counsel

15. Willinger now asserts that his attorney was ineffective. To establish ineffective assistance of counsel, Willinger must make a two-prong showing: (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *accord*, Rogers v. United States, 91 F.3d 1388, 1391 (10th Cir. 1996). To prove deficient performance, Willinger must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 776 (10th Cir. 1998). Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995). In order to be found constitutionally ineffective, trial counsel's performance must have been

completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.  Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997).  Counsel's performance in this case was not "completely unreasonable" and, even if it had been, the Court cannot say that Willinger has established a reasonable probability that but for counsel's unprofessional errors, he would have received a lower sentence.

Methamphetamine vs. Amphetamine

16. Willinger's first two grounds for assertion of ineffectiveness of counsel involve the allegation that the attorney did not understand the difference between amphetamine and methamphetamine and, therefore, not only did he fail to explain this difference to Willinger, but he also failed to establish at sentencing the difference in drug equivalents between amphetamine and methamphetamine.

17. If, indeed, the attorney did not explain the difference in sentencing consequences between amphetamine and methamphetamine, this would render Willinger's plea involuntary, as ineffective assistance of counsel can render a guilty plea involuntary.  Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366 (1985); United States v. Williams, 919 F.2d 1451, 1456 (10th Cir. 1990) ("[b]oth the attorneys and the court have a duty to apprise the defendant of the consequences of the plea and ensure that it is voluntary.  If these duties are not discharged, the defendant is not 'fully aware' of the consequences of the plea and it is therefore involuntary").

18. However, Willinger does not claim that his plea was involuntary, and he does not seek to have the plea withdrawn or voided.  The only relief he seeks is to have the term of incarceration, to which he was sentenced under the plea agreement, reduced.  This is not an appropriate remedy for an involuntary plea.  The appropriate remedy for a defendant who asserts in post-conviction

proceedings that his plea was involuntary is withdrawal of the plea. Gill v. Turner, 443 F.2d 1064, 1066 (10th Cir. 1971). A court's determination that a plea of guilty is involuntary is not an adjudication of the defendant's guilt or innocence and does not constitute a bar to further proceedings based on the original indictment. Wynn v. Page, 390 F.2d 545, 546 (10th Cir. 1968). Upon withdrawal of a guilty plea, the government has the option of trying a petitioner on all original charges, including any that were dropped in connection with the plea agreement and, if convicted, the defendant could be sentenced to a longer term than he received under the voided plea agreement. Clearly, such a remedy is not always to the defendant's advantage.

> [I]t should be pointed out to Mr. Shupe and the many others who are filing petitions for a writ of habeas corpus in this court, that it is possible that some may be doing themselves more harm than good.

Shupe v. Sigler, 230 F. Supp. 601, 606-07 (D. Neb. 1964). Because Willinger does not seek to have his plea voided on grounds that it was involuntarily made due to his ignorance of the difference in sentencing consequences between methamphetamine and amphetamine, the Court need not resolve the factual dispute as to whether his attorney informed him of this difference, and this ground does not provide a basis for relief under § 2255.[2]

19. Willinger also charges that trial counsel did not establish for the court the difference in drug equivalents between methamphetamine and amphetamine, and failed to require the government to meet its burden of proof as to the type and amount of drugs representing Willinger's relevant

---

[2]While not resolving this factual dispute, the Court takes judicial notice of the fact that Willinger's trial counsel, Charles Daniels, is a highly experienced defense attorney who has tried numerous cases in federal court. The Court is extremely doubtful that Mr. Daniels is unaware of the difference in sentencing consequences between methamphetamine and amphetamine. And, as the Respondent points out in its briefing, there is evidence on the record that Daniels' paralegal was investigating and reporting to him the factual basis for the charge of possession of methamphetamine, as opposed to amphetamine.

9

conduct, which led to inaccuracies in the sentencing range and caused the trial judge to sentence at the high end of the range. These arguments are interrelated and are based on Willinger's assertion that the government did not, and could not, prove that Willinger possessed more than 100 grams of methamphetamine, as the record indicates the drugs seized at Willinger's house consisted primarily of amphetamine.

20. Willinger argues that his attorney should have maintained that his "relevant conduct" for purposes of sentencing was possession of much less than the 100 grams of methamphetamine which he admitted having, because the records of seizures at Willinger's house showed only 3.9 grams of pure methamphetamine, along with 253.5 grams of amphetamine. Willinger asserts that if these drug amounts had been used by his counsel to show relevant conduct, he would have ended up in a sentencing range of 63-78 months, well below the 151-188 months provided in the plea agreement. Thus, even if the Court accepted the plea agreement's 151-188 range, the Court nevertheless would likely have been persuaded to sentence Willinger at the low end of the agreed range, rather than at the top, thus demonstrating trial counsel's ineffectiveness. Willinger cites as authority for this argument United States v. Glover, 97 F.3d 1345 (10th Cir. 1996).

21. In Glover, the Tenth Circuit found that trial counsel was ineffective in failing to require the government to prove the type of methamphetamine involved in the criminal activity to which defendant pled guilty. Although the distinction has since been eliminated, at the time of the Glover sentencing, the Guidelines made a distinction between two types of methamphetamine, L type and D type. Because defense counsel did not insist that the government prove which type of methamphetamine was involved in the offense, the court sentenced defendant based on the type that rendered a longer sentence. Willinger argues that there is no evidence on the record in this case to

prove that he possessed the 100 grams of methamphetamine to which he pled guilty, and he analogizes his situation to that of the defendant in <u>Glover</u>, asserting ineffectiveness in that his attorney did not insist that the government prove that he possessed the charged amount of methamphetamine as opposed to amphetamine.

22. There is a difference, however, between this case and the situation involved in <u>Glover</u>. There, defendant pled guilty to involvement with methamphetamine and, in order to reach the correct sentence, the court was obliged to determine which type of methamphetamine was involved in the offense. Here, Willinger pled guilty to possession with intent to distribute 100 grams or more of methamphetamine. The penalty for this offense can be determined without the necessity for any subsidiary step, which was not the case in <u>Glover</u>. What Willinger seems to be arguing is that he was actually guilty of possession of a different drug than the one to which he pled, that is, amphetamine rather than methamphetamine. However, the sentencing court was not obliged to assume that Willinger committed a different crime than the one he admitted to, and to base its sentencing discretion on that different crime.

23. "Relevant conduct" generally involves actions of the defendant, other than or in addition to the crime of conviction; here, Willinger appears to argue that his "relevant conduct" is an entirely different offense. If indeed the name of the drug was factually incorrect and Willinger inadvertently pled to the wrong crime because of incompetence of counsel, the plea agreement is involuntary and should be voided. However, as noted above, Willinger has not asked that the plea be voided, nor would it be wise for him to do so. He cannot rely on the validity of the guilty plea and simultaneously argue that it was based on factual inaccuracies. Because Willinger is not relying on any alleged involuntariness of his plea, the Court is left with the rule that a voluntary guilty plea admits both the

11

acts described in the indictment and the legal consequences of those acts. United States v. Allen, 24 F.3d 1180, 1183 (10th Cir. 1994). Willinger stipulated to the drug type and quantity in the plea agreement, and the Glover court emphasized that, if the indictment or plea agreement in the case had actually specified the type of methamphetamine involved, the result would have been different. Glover, 97 F.3d at 1347. Both the indictment and plea agreement in this case specified the drug that was involved, and the amount of that drug; thus, Glover actually undermines Willinger's argument rather than supporting it.

24. The notion that the court can accept a plea under Rule 11(e)(1)(C) for purposes of conviction, but then for purposes of sentencing assume that defendant actually committed a different crime involving a different drug, does not make logical sense and would fly in the face of the rule regarding this type of plea. "Such a plea agreement is binding on the court once it is accepted by the court." F. R. Crim. P. 11(e)(1)(C). *See also*, United States v. Rubio, 231 F.3d 709, 713 n.2 (10th Cir. 2000) (where a Rule 11(e)(1)(C) plea agreement specifies the drug quantity upon which defendant's sentence will be calculated, and the ultimate sentence is consistent with the agreement, the defendant will be held to the terms of the agreement); United States v. Veri, 108 F.3d 1311, 1314 (10th Cir. 1997) ("a defendant's assumption that relief other than that specified in the [11(e)(1)(C)] agreement might be available is unreasonable").

25. It is not ineffective assistance of counsel to fail to make a futile argument. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). The Court finds that Willinger's trial counsel did all he could, within the realm of common sense and good lawyering, to convince the sentencing judge to sentence Willinger at the low end of the agreed-upon range. Willinger "recognizes that the sentence actually imposed by the court was within that allowed by the Plea Agreement" (Points and Authorities

in Support of Motion to Vacate Sentence, Doc. 2, at 1). The fact that the Court handed down a sentence at the high end of the range does not establish ineffective assistance of counsel.

26. To bolster his ineffectiveness argument, Willinger has gone through the record and found no evidence to show that the government could prove more than 100 grams of methamphetamine were found at Willinger's house. Although Willinger made clear that the drugs seized at the Fourth Street trailer were not to be considered in his sentencing, his plea to possession of this amount was not necessarily based solely on the drugs seized at his house. He admitted that he "belonged to social circles which used stimulants or depressants recreationally," that he was responsible "for possessing and sharing those substances with his acquaintances," and that it is this activity which forms the factual basis for his plea to Count III. (Doc. 299 in CR 96-563, at 2).

27. Willinger's "other methamphetamine activities" are the basis for his plea, and these activities went beyond whatever was seized at his house. The indictment charges that the period of the offense ran from January 1, 1995 to on or about March 5, 1997. (Third Superseding Indictment, Count III, Doc.123 in CR 96-563). Willinger stated at the sentencing hearing that, "between those dates you read, January 1995 and the 5th day of March, 1997, I did possess more than 100 grams of methamphetamine." (TPH 8). Even if it were true that 100 grams of methamphetamine were not seized at Willinger's house shortly before his arrest, that says nothing about his possession of that amount of methamphetamine on other dates. His recent affidavit notwithstanding, the record indicates that Willinger knew that the government could prove him guilty of the crime for which he was charged and that his attorney negotiated the best deal possible under the circumstances.

<u>Preclusive Effect of Plea Agreement</u>

28. Willinger also argues that his attorney was ineffective in failing to argue at sentencing that

13

the 11(e)(1)(C) plea agreement tied the court's hands by: (1) precluding the court from relying on the presentence report's consideration of evidence from the Fourth Street trailer; (2) precluding the court from taking judicial notice that Willinger was a primary player in the offense; and (3) precluding use of the "career offender" Guideline provision.

    29. The Court rejects these arguments. First, it is apparent that the Court did not rely on evidence from the Fourth Street trailer, and that Willinger's attorney made sure that this evidence would not form part of the sentence. As noted above, Daniels filed extensive objections to the presentence report, focusing primarily on the issue that there was no evidence that Willinger was involved in any activities at the trailer. Both parties confirmed at the sentencing hearing that they agreed that the Fourth Street evidence would not be considered by the court in sentencing Willinger, and the court ordered that certain stipulated paragraphs were to be excised from the presentence report. (TSH 4-7, 8, 12). The sentence that was handed down was in the agreed-upon range, and this Court will not engage in what amounts to second-guessing the motives of the trial judge.

    30. The trial judge did state that he considered that Willinger played a primary role in the offense, and Willinger faults his attorney for not arguing that the 11(e)(1)(C) plea agreement precluded the court from "taking judicial notice" of this factor, and from using the career offender provision to sentence Willinger at the high end of the range. However, the record indicates that trial counsel did indeed make this argument. The judge began the sentencing by noting that the offense level is 36 and the criminal history category III, establishing a guideline range of 262 to 327 months. The court went on to state that Willinger had at least two prior felony convictions for crimes of violence or drug offenses. At this point, Daniels broke in and asked if he might be heard. He stated that the range of sentences just mentioned was the one in the original presentence report, "but not

14

in the stipulation of the parties and not resulting from the stipulation of the parties in the sentencing agreement." (TSH 13). The Court responded, "I haven't finished," and then proceeded to find that, due to the plea agreement under Rule 11(e)(1)(C), which the court accepted, the offense level would be set at 32 which, with the criminal history category of III, renders a guideline imprisonment range of 151 to 188 months. (TSH 14).

    31. In addition, even after the judge accepted the plea agreement and said he would use the agreed-upon range of 151 to 188 months, Daniels again asked permission to make a further point. He told the court:

> Those higher numbers that were in the presentence report were based on paragraph 48, which was withdrawn by the Probation Office, and paragraph 49, which the Court has already determined that it was disregarding. It's those points that lead to the higher rangers above the 151 to 188 that the Court has determined appropriate in this case. I just don't want the record to go to the Bureau of Prisons with a recitation that the Court is using 151 to 188 but there's some other thing that he really deserves because it affect classification and all kinds of things.
>
> And the stipulations that we entered into with the government are based on fact – I don't think they can make factual stipulations that aren't true – result in disregarding those points in the presentence report and result in the guideline range that the Court has determined, which a level 32 and 151- to 188-month range.
>
> I am loathe to interrupt, but I just want to make sure that those old materials don't creep back in through the back door here, and I realize they came from the presentence report.    ***
>
> I thought I heard the Court say that the levels were 37 or 40 or something like that and that the sentence – the appropriate sentence range was somewhere in the 200s. And those are conclusions that would flow from the disputed material that has now been excised. I just don't want to make it appear that he somehow deserved more than the enormous amount that he has pled to and that the

15

>     government has agreed is the appropriate guideline and sentencing
>     range.

(TSH 14-16).

32. Following this recitation, and an exchange with the probation officer, the judge called a recess to clarify the current status of the presentence report. After this recess, the judge announced that the Probation Office had not had the opportunity, following the last-minute letters from counsel, to assist the court in revising the sentencing language he had just used. He stated he would start over with the sentencing. At this point, the judge noted that, due to Willinger's prior conviction record, the appropriate guideline range would be 188 to 235 months, but that because of the Rule 11(e)(1)(C) plea agreement, which the court was accepting, the range would be 151 to 188 months. The court also characterized Willinger as one of the primary distributors of a drug conspiracy. He sentenced Willinger to a term of 188 months. (TSH 16-19).

33. These exchanges indicate that Willinger's trial counsel was doing all he could to emphasize that the binding plea agreement precluded the sentencing court from using information in the presentence report that was inaccurate and detrimental to Willinger. Counsel sought permission twice to interrupt the court in order to make this point. In addition, in his opening remarks at sentencing, Willinger's attorney pointed out the dearth of evidence that Willinger played a major role in a drug conspiracy (TSH 3-5). The sentencing court did not accept these arguments. The judge was justified in rendering any sentence within the stipulated range, and the fact that he chose to sentence at the high end does not mean that defense counsel was ineffective. The Court finds nothing on the record to indicate that Willinger's trial counsel neglected to raise any argument justified under the circumstances, and Willinger has therefore failed to satisfy the first prong of Strickland. In

16

addition, the Court cannot say that, even if Willinger's attorney had made the arguments suggested in this motion, the sentencing court would have accepted them, thus Willinger's argument fails to satisfy the second prong as well. *See* United States v. Seyfert, 67 F.3d 544, 549 (5th Cir. 1995) ("Then, despite the absence of case law on the subject, the sentencing judge would have had to accept counsel's argument. We do not find that such a tenuous likelihood rises to the level of 'reasonable probability'"). The claim of ineffectiveness is therefore rejected.

### **Recommended Disposition**

That the motion be denied and the case dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge